# Keisel *versus* Earnest.

1. A vendor of land in Pennsylvania cannot claim the way-going crop.

2. One tenant in common of land cannot be sued *in trover* by his co-tenant for his portion of the crop grown on the land.

3. Where one tenant in common is permitted by less than the whole of the other heirs to occupy the premises as tenant, his interest as tenant in the way-going crop cannot exceed the shares of which he was the lessee.

4. Proof that one heir demanded rent for the use of his share of the land for the year 1848, is no evidence of a lease by him for the year 1849 with the way-going crop, where the person in possession is a co-tenant and cannot be dispossessed by another co-tenant.

5. Mere permission by some of the co-tenants for another of the co-tenants to enter upon the premises, no terms being fixed, does not constitute a tenancy for a year, but at most a tenancy *at will* of the interest of the parties agreeing to the occupancy.

6. A tenant in common in possession is bound to account for the rents and profits.

7. If he were a tenant at will, his right to emblements was barred by his joining in a proceeding in partition under which the premises were sold.

8. If under a judgment in partition obtained during *the first year* of the co-tenant's occupancy, even under a lease, the premises are sold during the second year of his occupancy, the law will not infer a lease for the second year merely from his possession during the first year, for such inference is incompatible with the demand for partition made in the first year.

9. A co-owner of land has no right to claim as against a purchaser, under proceedings in partition, a way-going crop put out by him after the order for sale of the premises under the proceedings in partition to which he was a party ; and especially when such co-tenant gave no notice at the sale under the partition, that he claimed as tenant a right to a way-going crop, and the deed to the purchaser contained no reservation of such claim.

ERROR to the Common Pleas of *Montgomery county.*

This was an action in trover, brought to November Term, 1850, by Eli Earnest *v.* James Keisel, to recover damages for an alleged trover and conversion of wheat in the straw, which had grown on about four acres of ground.   February 26, 1852, verdict for plaintiff for $108.15 damages with costs.

Eli Earnest, the plaintiff, on the 31st day of March, 1848, entered

into possession of a tract of 40 acres and 108 perches of land, situate in Upper Dublin township, and continued thereon two years, viz., until the 1st April, 1850; and he claimed to have occupied the premises as tenant.    In the fall of the last year he was there, viz., in 1849, he sowed a field of about four acres of wheat, which was in the ground when he left the premises on the 1st of April, 1850.

James Keisel, the defendant, on the said 1st of April, 1850, succeeded Eli Earnest in the possession of the said land, as the purchaser thereof; and about the 4th of July following. cut and harvested the grain growing thereon: and upon claim being made for the grain by Eli Earnest, the previous occupier, Keisel refused to permit him to cut it, and cut and took it away himself; and to recover damage for the taking of the grain the action was brought.

On the trial the defendant denied that Eli Earnest was a *tenant* of the premises; and also claimed, that the grain claimed by the latter had passed to himself by a sheriff's sale of the land on which it was growing, held October 16, 1849 (while Earnest was in possession), in pursuance of a proceeding in the Court of Common Pleas, for the *partition* of the said tract of land among the heirs of Baltzer Earnest, deceased.

Baltzer Earnest died September 8, 1829, intestate, seised in fee simple of several tracts of land, of which the said tract of 40 acres and 108 perches aforesaid was a part, leaving a widow, Catharine, and five children and three grandchildren as heirs.    On the 17th August, 1830, the heirs of Baltzer Earnest, deceased, by deed conveyed to Catharine, the widow, the said tract of 40 acres and 108 perches of land, for and during her natural life, as her full dower and thirds in all the lands and tenements of which Baltzer Earnest died seised, subject to all the restrictions and conditions to which tenants in dower by the laws of this Commonwealth are subject when dower is legally assigned; she releasing her dower and thirds in the remaining lands, which were immediately partitioned or distributed among the heirs. The said tract of 40 acres and 108 perches was accordingly so taken and occupied by the widow until her death, on the 18th of April, 1847, whereupon the same reverted to the heirs of said Baltzer Earnest, the elder, and to their heirs and assigns.

At the widow's death, Samuel Earnest was in possession of the premises *as her tenant*, and remained thereon till April 1, 1848, when Eli Earnest entered as aforesaid. There was no lease of the premises to Eli, from the heirs, shown at the trial.    The only evidence on the subject of a *tenancy* by him, was as follows, viz., that William Earnest, an heir, and Samuel Evans, intermarried with an heir of Baltzer Earnest, deceased, had previously given their consent to Eli, that he might enter as tenant; but no time was mentioned for the duration of the term, and nothing was said about any sum he was to pay as rent.

[Keisel *v.* Earnest.]

It was also shown by the plaintiff below, that Christian Keisel and Ann his wife (who was also an heir) had subsequently, to wit, in October, 1849, brought an action against him, and recovered $35, as the share of the said Ann of rent, for use and occupation of the premises, for the year ending April 1, 1849.

This was the *only* testimony in the case going to show a *tenancy* of the premises. There was no testimony showing any agreement or acquiescence, on the part of the remaining heirs, that Eli be in possession as *tenant*.

Eli Earnest being also an heir, it was contended for defendant below, that he must be considered to have occupied the premises as *such*, and not as tenant.

On the 30th January, 1849, an action was instituted in the Court of Common Pleas, between the heirs of Baltzer Earnest, for the partition of the aforesaid tract of land, in which all the heirs, including Eli Earnest (who was in possession), except Christian Keisel, and Ann his wife, also an heir, were plaintiffs, and the said Christian Keisel and his wife were defendants. On the 6th of February, 1849, the *narr.* was filed, and the case was proceeded in to judgment *quod partitio fiat*, which was rendered March 2, 1849.

All the heirs having refused or neglected to take the premises at the valuation, an order of sale was granted by the Court, August 31, 1849, at the instance of the demandants; which, on September 3, 1849, was issued to the sheriff, who sold the said tract of land at public sale, on the premises, on the 16th of October, 1849, to James Keisel, the defendant below, for $5400, according to the conditions of sale, which were offered in evidence at the trial, and contained no reservation of the grain.

Eli Earnest was present at the sale, but gave no notice of any tenancy, and made no claim of any reservation of the grain now in dispute, then growing on the land.

The sale thus made was confirmed by the Court, the purchase-money paid, and a deed for the premises executed from the sheriff to James Keisel, and acknowledged, November 21, 1849. This deed contains no reservation of the grain, and was relied upon by the defendant below as a defence to the action.

Under this deed James Keisel entered into possession of the land, April 1, 1850, and in July following he cut and harvested the grain in dispute.

Subsequently to the sheriff's deed, Eli Earnest, with the other heirs, at the request of the purchaser, executed to him a release for the same premises, dated November 30, 1849.

Thus, Eli Earnest claimed to recover, for grain sown by him, while in possession of the premises, and afterwards converted by Keisel,

[Keisel *v.* Earnest.]

the purchaser, who succeeded him in possession; the said Eli being a joint owner of the premises, as co-heir of Baltzer Earnest, deceased, and a plaintiff in the partition in which it was sold; and there having been nowhere a reservation of the said crop, by or for him.

On the part of the defendant, the *tenancy* of the plaintiff was denied; but it was alleged, that if there was such tenancy, the right to the grain growing on the land, passed to the defendant by his purchase of the property at the public sale.

SMYSER, President Judge, *inter alia*, charged the jury that even in the case of a judicial sale of premises, on which there was a tenant, the right of the tenant to the crop remains, unless the sale was under a judgment prior to the lease. But he charged that the sale under the proceedings in partition, was not *a judicial sale:* 4 *W. & Ser.* 184; also *Miller on Partition* 292. That it was merely a sale by the parties, had *ex necessitate*, to attain equity of partition or distribution. He referred to the jury the inquiry whether Eli Earnest occupied the premises between April 1848 and April 1850, *as tenant* under the owners of the fee, yielding and paying rent; for if he did not live on the premises in that capacity, but merely as part owner of the property, having the same right of entry and occupancy as any of the other tenants in common, then the grain growing on the land would belong to the tenants in common jointly, and not to him exclusively; and would pass by their conveyance to the purchaser, James Keisel. But if he was there *as a tenant*, yielding and paying rent, and as such put out the crop, then it was his, and continued to be his, notwithstanding the sale, except the one-eighteenth part thereof, which he forfeited by his silence at the sale when he ought to have spoken.

He said that the right of the plaintiff to recover depends altogether upon his success in satisfying the jury that he stood in the relation of a tenant. "If he did, your next inquiry will be into the value of the crop, which was converted by defendant to his own use; and for that we refer you to the evidence. After ascertaining its whole value you will deduct 1-18th therefrom; and the residue will be the measure of the plaintiff's damages in this case." But he observed, that if the jury found "that he was not a tenant, but lived on the property simply as one of the joint owners, in that capacity and by virtue of his right as joint proprietor," he could not recover.

On the part of the defendant a point as follows was submitted:

There being no reservation of the grain at the time of sale, or in the deed from the sheriff to James Keisel, the purchaser, the grain growing on the premises conveyed by said deed, passed to

[Keisel *v.* Earnest.]

James Keisel, the defendant, absolutely; and the plaintiff here cannot recover for the same in this action.

Answer.   We cannot so instruct the jury; but say to them as we have said in our general charge, that if plaintiff was tenant of the premises, yielding and paying rent during the two years from April 1848 to 1850, then his right to recover the value of his crop is not affected by anything in the sheriff's deed; nor is it impaired by anything that occurred at the sale, beyond the 1-18th part thereof; to which extent his right would be forfeited by his presence and silence on that occasion, when the land was being sold without any reservation.

But if he was not a tenant, then the grain growing belonged to all the tenants in common, and the want of reservation as stated in the point, would in that case vest it in the purchaser.

Error was assigned: That the Court erred, 1. In instructing the jury that they "must determine for themselves, from the evidence, whether Eli Earnest leased the premises from his co-heirs and co-tenants, and in the relation of tenant put out the crop." And that "the jury will see then, that the important inquiry for them is, whether Eli Earnest occupied these premises between April 1848 and April 1850, as tenant under the owners of the fee, yielding and paying rent."   2. In making the cause turn on the finding of the jury, whether or not Eli Earnest was tenant of the premises at the time he sowed the grain.   3. In submitting to the jury the question as to whether the plaintiff was tenant of all the heirs, during the period from April 1, 1848, to April 1, 1850; as there was no evidence in the case to warrant it.   4. In referring to the jury the question, whether the plaintiff was tenant of the premises for the year ending April 1, 1850, when there was no evidence whatever in the case, going to show that he was tenant during that period.   5. In charging the jury that, "By the conveyance of his (the plaintiff's) estate in the land, he must be held to grant all that is properly appendant or appurtenant to the land and his estate in it: this would pass his right as owner to his share of the rents; but it no more included his right as tenant to the growing crop, than if that crop were growing on different premises altogether from those conveyed."   6. In charging that although there was no reservation of the grain in the conditions publicly read, at the sale at which Eli Earnest was present, and he gave no notice of his claim, yet he was only concluded as tenant by his silence as to 1-18th of the rent.   7. In charging, "But, if he was there as tenant, yielding and paying rent, and as such put out the crop, then it was his, and continued to be his notwithstanding the sale, except the 1-18th part thereof, which he forfeited by his silence at the sale, when he ought to have spoken."   8. In

[Keisel v. Earnest.]

charging that, "The right of the plaintiff to recover depends altogether upon his satisfying (the jury), that he stood in the relation of tenant. If he did, your next inquiry will be into the value of the crop. After ascertaining its whole value, you will deduct 1-18th therefrom, and the residue will be the measure of the plaintiff's damages in this case." 9. In refusing to answer affirmatively the defendant's point, and in answering it as he did. 10. In charging that the sheriff's sale of the premises was not a judicial sale.

The case was argued by *Hancock* for plaintiff in error.—It was alleged that there was not evidence of tenancy and of its extent to warrant its submission to the jury. That the heirs being tenants in common, each one could lease only for himself. *Comyn on Land. and Ten.* 21–22.

But if the tenancy existed, it was contended that it was determined by the proceedings in partition: *Miller on Partition* 119; 2 *Harris* 134, McClure v. McClure. The entire interest of the parties (the crop included) passed by the sheriff's sale: Sallade v. James, 6 *Barr* 144.

It was contended that the sale was a *judicial sale;* and if a tenancy intervened between the judgment in partition and the sale, whether between the parties or the parties and a stranger, the tenancy with its incidents was determined by the sale.

The tenancy, if any existed, at its commencement was for no definite period, and therefore was for only one year; and as it expired on the 1st of April, 1849, neither the parties, nor any of them, had power, after the judgment in partition, to extend the tenancy so as to bind the purchaser under the judgment in partition. The sale passed the premises and the appurtenances, rents, &c., and no interest remained in the heirs or any of them. The deed conveyed the premises, for such estate, as the decedent, B. Earnest, held it.

*Boyd,* with whom was *Stinson,* for defendant in error.

It was contended that the plaintiff in the action was a *tenant;* and that where a tenant continues to hold the demised premises till after the commencement of a second year, he remains tenant: 4 *Rawle* 123.

It was contended that the tenancy was not dissolved by the judgment *quod partitio fiat.* That the proceedings in partition could not have this effect, because the title to the land was not changed merely by the entry of *the judgment;* the estate of the heirs was not divested: 7 *Barr* 238. The whole proceedings in partition are *in fieri* until the deed is acknowledged by the sheriff and delivered to the purchaser: *Miller on Partition* 161; 4 *Law*

*J.* 231; Mitchell *v.* Harris, 6 *Watts* 32; 7 *Id.* 159; 8 *Ser.* &amp; *R.* 315; 14 *Id.* 193.

It was said that the case did not fall within the rule of Sallade *v.* James, 6 *Barr* 144; for in partition the judgment creates no encumbrance or lien subject to which the tenant takes the property, as in the case referred to. It is but the initiatory step taken to have the property disposed of.

It was contended that the sale was not a judicial sale: 4 *W.* &amp; *Ser.* 184; *Miller on Partition* 292. It was a sale made by the parties, the owners of the fee, through the sheriff, who acted both as the agent for the parties and the Court; and as such, what passed by that conveyance? The sale passed *the fee* to the purchaser. The plaintiff below was entitled to the 1-18th part of the fee as one of the owners of the fee. He did not hold the title to the grain as owner of the fee, but as a *tenant;* he therefore being entitled to 1-18th of the fee, *and not reserving his right to the grain growing upon that purpart of the fee, it passed to the purchaser by his deed.* But as to the balance, he remained in precisely the same situation as if he had no other interest than a tenant, which could not be divested by a sale made by a landlord under similar circumstances.

As to the matter of *notice,* reference was made to the case of Hood *v.* Fahnestock, 1 *Barr* 474.

The opinion of the Court was delivered by

LOWRIE, J.—The learned judge was right in declaring that Earnest could not be his own lessee, and that, when he voluntarily joined in the proceeding by which the title was conveyed to Keisel, he parted with the proportion of the growing crop that corresponded with his share of the land; for, after some trouble in Pennsylvania, it is now settled that a vendor cannot claim a way-going crop. But this proposition leads directly to another; that, at the worst, Keisel was owner of the crop in common with Earnest, and could not be sued in trover for taking the exclusive possession of it.

Even if Earnest, though one of the tenants in common, might be entitled to a lessee's privilege of a way-going crop, it could not exceed the shares of which he was lessee; and, since one tenant in common in possession is not presumed to be the lessee of his co-tenants, his title as lessee must be measured by the testimony. As to some of the shares, we discover nothing that even looks like evidence that he was lessee of them; and as to the others, the testimony is entirely inconsequential.

The proof that one heir demanded rent for the use of his share of the land for the year 1848, is no evidence of a lease for 1849 with its way-going crop, when, as tenant in common, Earnest could

[Keisel *v.* Earnest.]

not be dispossessed by a co-tenant. Two of the other heirs say that they allowed him to enter as tenant; but this does not make him a lessee, for no terms were fixed; and the most that could be made of such a permission is that it constituted him tenant at will of those shares. The proper result of the evidence is that Earnest was a tenant in common in possession, and bound to account for the rents and profits to his co-tenants. If he had been properly allowed to take the crop, it would have added to his liability to his co-tenants, and given them a profit out of the land after their title had ceased. If he could be regarded as a tenant at will, he might be entitled to emblements at common law; but even that right is barred when the tenancy is terminated by the act of the tenant, as it was here by his joining in the proceedings of sale.

When we find all the co-tenants, in January, 1849, joining in an action of partition of the land, and Eli Earnest one of the plaintiffs, it is impossible to infer from his possession in 1848, even if under a lease, that he was to hold for the year 1849, as on a lease from year to year; for such an inference is entirely incompatible with the demand for partition made before the first year had run out. Even the judgment that partition be made, 2d March, 1849, preceded the termination of the first year's possession. Thus the implication of a tenancy from year to year of any share of the land is necessarily excluded.

But when we notice some other matters, this claim appears still more remarkable. It was ascertained that the land would not divide, and, in August, 1849, the Court ordered it to be sold. It must have been after that this crop was put in, and yet it is plain justice that one tenant in common has no right in this way to extend his interest in the land to a period beyond the sale in partition, a proceeding intended to alter the relations of all the parties to the land.

Add to this that, at the sale, there was no notice that Earnest was a lessee of any of the shares or was claiming a way-going crop; that the deed contains no reservation of it; and that Earnest is a substantive party to it, conveying all his interest in the land; and we are at a loss to see any just or legal reasons for his claim to a way-going crop.

Judgment reversed and new trial awarded.